Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Spencer Wolgang (SW 2389)
swolgang@ipcounselors.com
Mary Kate Brennan (MB 5595)
mbrennan@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Ideavillage Products Corp.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IDEAVILLAGE PRODUCTS CORP.,<br>*Plaintiff*<br><br>v.<br><br>LONGTENG, LOUISSU, LOVE YUN, LOVEYOUANDLOVEME, LPDE, LUCY ALLEN ZHENG, LULIHUA, LUOGUILIN1986, LUOLEYUAN2012, LUOLUOLUO, LWWMM, L-ZHONG, MAKEYOURLIFEMORESUCCESSFUL, MECEROCKA8, MERCHANT18, MINI WORLD S, MJSZYOUTH0112, MOGUM, MQRSTORE, MVP SHOW, MYSTERY, NASC, NCT, NINIYY SHOP, PINGPING998865, PLOP PLOP GIRL, PPIXIAXIAOKANG, PRETTYPRETTYPRETTYPRETTYBOY, QER I BELIEVE I CAN FLY, QIANHAIMJ, QINGSHOUSE, QINGXUEDIAN, QJQXY, QYHSM, RASKKTER, RENHAOS, RMSLKFGYLOVE, SAMDIGEOLOVE, SELLERDEAL, SHADES DARKER, SHANBIAN2017, SHANDECUI, SHANDEQIANG, SHAOWEI FASHION, | **CIVIL ACTION No. ___**<br><br><br>**COMPLAINT**<br><br>**Jury Trial Requested**<br><br>**FILED UNDER SEAL** |

SHENGHUHOUSE, SHENZHENNASC, SHIGUOWEI, SHINHWA, SHISHANGDIAN, SHKYIOY1999, SHUNTUDIANZI, SHUNWEIGONGSI, SINCEWIL, SPECIAL CASE, SUFIT, SUNWUKONG, SUPENGLIANG, SXZYYOUTH0115, SYS613, SYTWY, SZNASC02, SZNEWLIN, TANABATA, TANFENFENTAN, TANXIAOYAN55, TANZY, TCHBEAUTY, TENGOFASHION, THANPOO, TIANSHIDECHIBANG, TODAY'S PROMOTION, TRANSHOME, TSAOYA, VIVIKIDS, WANGLEI964, WANGQQ, WANGYONGJIE521, WEIERJINSEN, WEIWEISHISHANGNEIYIDIAN, WENXIAOLONG, WEYRHEHRSTJ, WHDMINMINNIE, WIHT ME, WUIXAOXIN, WZCANGYUE, XAOFAFA568, XIAOJIANJIANZEJIAN, XIAOSHIHOU, XIECHUNX11365, XINGANTUMAOYI, XINX1100, XUANMI, XULIFIGHTING, XUZHOUUNIVERSALCOMMERCECOLTD, YAGKN8989, YANHONGGAOTIE548, YAOMINGYAN, YEXIAOJUAN, YIBEIQIONG, YIWENSHOP, YIWU CITY PU SHENG ELECTRONICS TECHNOLOGY CO., LTD., YIWU SHOPPING CENTER, YJFENG, YMILONG, YONGSHENG DIGITAL FRANCHISE STORE, YTGIT, YUEYUNSHOP, YUNYUNZHONGSHENGG, YUYANYAN, YWGSYOUTH04, ZEMING9319, ZHANGCHUNJI, ZHANGYUCHEN, ZHAOYANGHONGTRADE, ZHIMUSHIYE, ZHOUANPING, ZHOUCHANGQUN, ZHOUSHUFANG, ZUQIURUN, ZYHZYH and ZYQ MALL,
*Defendants*

Plaintiff Ideavillage Products Corp. ("Ideavillage" or "Plaintiff"), by and through its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

This action involves claims for trademark infringement of Plaintiff's federally registered trademark in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered trademark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* and related state and common law claims (the "Action"), arising from Defendants longteng, Louissu, love yun, loveyouandloveme, lpde, lucy allen zheng, lulihua, luoguilin1986, luoleyuan2012, luoluoluo, Lwwmm, L-ZHONG, MakeYourLifeMoreSuccessful, mecerockA8, merchant18, Mini World S, mjszyouth0112, MoguM, mqrstore, mvp show, mystery, nasc, NCT, niniyy shop, pingping998865, Plop plop Girl, PPixiaxiaokang, PrettyPrettyPrettyPrettyBoy, QER I believe i can fly, qianhaimj, qingshouse, qingxuedian, qjqxy, QYHSM, RASKKTER, Renhaos, Rmslkfgylove, Samdigeolove, sellerDeal, Shades Darker, Shanbian2017, Shandecui, shandeqiang, shaowei fashion, shenghuhouse, shenzhennasc, shiguowei, shinhwa, shishangdian, SHKYIOY1999, Shuntudianzi, shunweigongsi, sincewil, special case, Sufit, sunwukong, supengliang, sxzyyouth0115, SYS613, sytwy, sznasc02, sznewlin, Tanabata, tanfenfentan, tanxiaoyan55, Tanzy, TCHBeauty, tengofashion, Thanpoo, tianshidechibang, Today's promotion, Transhome, TSAOYA, vivikids, wanglei964, wangqq, wangyongjie521, weierjinsen, weiweishishangneiyidian, wenxiaolong, weyrhehrstj, whdminminnie, Wiht Me, Wuixaoxin, wzcangyue, xaofafa568, xiaojianjianzejian, xiaoshihou, xiechunx11365, xingantumaoyi, xinx1100, xuanmi, xulifighting, XuzhouuniversalcommerceCoLtd, yagkn8989, yanhonggaotie548, yaomingyan, yexiaojuan, yibeiqiong, yiwenshop, Yiwu city Pu Sheng Electronics Technology Co., Ltd., yiwu shopping

3

center, Yjfeng, Ymilong, Yongsheng digital franchise store, YTGIT, YUEYUNshop, yunyunzhongshengg, yuyanyan, ywgsyouth04, zeming9319, zhangchunji, zhangyuchen, zhaoyanghongtrade, zhimushiye, Zhouanping, zhouchangqun, zhoushufang, zuqiurun, zyhzyh and zyq mall (hereinafter collectively referred to as "Defendants" or individually as "Defendant") infringement of the Egglettes Mark (as defined *infra*) and Egglettes Works (as defined *infra*), including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Egglettes Product (as defined *infra*).

## JURISDICTION AND VENUE

1.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and the Copyright Act, 17 U.S.C. §§ 101 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

2.      Personal jurisdiction exists over Defendants in this judicial district pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this judicial district, and/or derive substantial revenue from their business transactions in New York and in this judicial district and/or otherwise avail

themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York and in this judicial district such that Defendants should reasonably expect such actions to have consequences in New York and in this judicial district, for example:

a.   Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Wish (as defined *infra*) as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the U.S., including New York, can view the one or more of Defendants' Merchant Storefronts (as defined *infra*) that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra*) and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.   Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products, which are held by or associated with

Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c. Upon information and belief, a majority of Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S.

d. Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address (as defined *infra*).

e. Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

f. Upon information and belief, Defendants are aware of Plaintiff, its Egglettes Products, Egglettes Mark and Egglettes Works, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York and this judicial district, as Plaintiff conducts business in New York.

3. Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact, and/or solicit business in this judicial district.

## THE PARTIES

4. Plaintiff Ideavillage Products Corp. is a New Jersey corporation, having a principal place of business at 155 Route 46 West, Wayne, NJ 07470.

5.      Upon information and belief, Defendants are merchants on the Wish.com online marketplace platform, which, upon information and belief, is owned by ContextLogic, Inc., a Delaware corporation with a principal place of business at One Sansome Street, 40th Floor, San Francisco, CA 94104, through which Defendants offer for sale and/or sell Counterfeit Products.

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Egglettes Product

6.      Plaintiff is a leading developer, producer, marketer, and distributor of quality, innovative consumer products.  Plaintiff promotes and sells its products through national direct response television advertising commonly called "As Seen On TV" ("ASOTV").  Plaintiff also promotes and sells its ASOTV products at the retail level at well-known mass retail outlets, including, without limitation: Wal-Mart, Target Stores, Bed Bath & Beyond, Toys R Us, Rite-Aid, CVS and Walgreens; through catalog companies; online, through its own website and its retail customers' websites; as well as through a network of international distributors, among other channels of trade.

7.      Plaintiff is among the most well-known, well-respected sources of many of the most popular and most successful ASOTV products sold in the U.S.

8.      One of Ideavillage's newest, most popular and successful products is a set of non-stick silicone pods that are designed to cook and make perfect hard-boiled eggs and omelets, which are marketed and sold under the distinctive EGGLETTES trademark ("Egglettes Product(s)").

9.      The Egglettes Product has achieved great success its initial introduction.

10.      While Ideavillage has gained significant common law trademark and other rights in its Egglettes Product, through use, advertising, and promotion, Ideavillage has also protected its valuable rights by filing for and obtaining a federal trademark registration.

11.     Ideavillage is the owner of U.S. Trademark Registration No. 5,500,970 for the wordmark "EGGLETTES" for goods in Class 21 ("Egglettes Mark").  A true and correct copy of the registration for the Egglettes Mark is attached hereto as **Exhibit A** and incorporated herein by reference.

12.     The Egglettes Mark is currently in use in commerce in connection with the Egglettes Product.  The Egglettes Mark was first used in commerce on or before the date of first use as reflected in the registration certificate attached hereto as Exhibit A.

13.     In addition, Plaintiff is also the owner of both registered and unregistered copyrights in and related to the Egglettes Product.

14.     Ideavillage is the owner of U.S. Copyright Reg. PA 2-106-754, covering the Egglettes Commercial and U.S. Copyright Reg. VA 2-094-787, covering the Egglettes Packaging Instructions and Recipe Book (collectively, the "Egglettes Works").  True and correct copies of the U.S. Copyright registration certificates for the Egglettes Works are attached hereto as **Exhibit B** and incorporated herein by reference.

15.     In addition to the channels described above, Ideavillage also markets the Egglettes Product through its website specific to the Egglettes Product, available at https://www.getegglettes.com ("Egglettes Website").

16.     The Egglettes Product typically retails for $14.99.

17.     Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in its Egglettes Product, Egglettes Mark and Egglettes Works.

18.     The success of the Egglettes Product is due in part to Plaintiff's marketing and promotional efforts.  These efforts include advertising and promotion through television, the

Egglettes Website, retailer websites and other internet-based advertising, print, participation in trade shows, among other efforts domestically and abroad.

19.     Plaintiff's success is also due to its use of the highest quality materials and processes in making the Egglettes Product.

20.     Additionally, Plaintiff owes a substantial amount of the success of the Egglettes Product to its consumers, and word of mouth buzz that its consumers have generated.

21.     As a result of Plaintiff's efforts, the quality of Plaintiff's products, and the word-of-mouth buzz generated by its consumers, the Egglettes Mark, Egglettes Works and Egglettes Product have become prominently placed in the minds of the public.  Members of the public have become familiar with Plaintiff's Egglettes Mark, Egglettes Works and Egglettes Product, and have come to associate them exclusively with Plaintiff.  Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association.

22.     Plaintiff has gone through great lengths to protect its interests to the Egglettes Product, Egglettes Mark and Egglettes Works.  No one other than Plaintiff is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Egglettes Mark or Egglettes Works without the express permission of Plaintiff.

### Wish and Defendants' User Accounts

23.     Wish.com is an online marketplace and e-commerce platform that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products originating primarily from China,[1] among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York (hereinafter, "Wish").

---

[1] *See* Armando Roggio, *Ecommerce Lessons from the Wish Shopping App*, PRACTICALECOMMERCE (Jan. 7, 2015), https://www.practicalecommerce.com/Ecommerce-Lessons-from-the-Wish-Shopping-App.

24.     A majority of the third-party merchants that have User Accounts with and operate Merchant Storefronts on Wish, like Defendants, are located in China.[2]  As of May 2015, over 40 million items from 100,000 User Accounts were available on Wish.[3]  Between June 2014 and May 2015, nearly 100 million distinct User Accounts became registered on Wish.[4]  Currently, Wish claims a base of over 300 million users.[5]  As one of the leaders of the worldwide e-commerce and digital retail market, Wish has generated billions in sales worldwide.[6]  Sales to the U.S. make up a significant percentage of the business done on Wish.  For example, online sales account for 8.6% of all retail transactions in the U.S., and nearly 8% of online shopping done by teenagers was performed using Wish, which is second only to Amazon.com.[7]  On Cyber Monday of 2017, Wish accounted for 6.2% of teenager spending.[8]  Currently, Wish is valued at over $8 billion, which is more than the market value of three of the largest traditional retailers in the U.S.[9]

25.     Wish aggressively uses the internet, including Facebook, Google and Pinterest, to market itself and the products offered for sale and/or sold by its third-party merchant users to potential consumers, particularly in the U.S.  For example, Wish is in the top-five largest

---

[2] *See* Greg Bensinger, *Wish, a Direct-From-China Shopping App, Lures Bargain Hunters*, WALL STREET JOURNAL (May 19, 2015), https://www.wsj.com/articles/wish-a-direct-from-china-shopping-app-lures-bargain-hunters-1431909072.
[3] *See id.*
[4] *See id.*
[5] *See* WISH.COM, https://www.wish.com/careers.
[6] *See* Connie Loizos, *Wish is Raising Again, and Giving Late-Stage Investors Protection*, TECHCRUNCH.COM (Oct. 28, 2016), https://techcrunch.com/2016/10/28/wish-is-raising-again-and-giving-late-stage-investors-protection/.
[7] *See* Deena M. Amato-McCoy, *Study: Teens Twice as Likely to Shop Online Than Adults*, CHAINSTOREAGE.COM (Oct. 16, 2017), https://www.chainstoreage.com/technology/study-teens-twice-likely-shop-online-adults/.
[8] *See* Marianne Wilson, *Teens hot on Black Friday, but cool on Cyber Monday*, CHAINSTORAGE.COM (Nov. 29, 2017), https://www.chainstoreage.com/real-estate/teens-hot-black-friday-cool-cyber-monday/.
[9] *See* Parmy Olson, *At $8.5 Billion, Shopping App 'Wish' Is Now Worth More Than Sears, Macy's and JC Penney Combined*, FORBES, https://www.forbes.com/sites/parmyolson/2017/09/20/wish-8-billion-funding-amazon/#c360ab961e1d.

advertisers on the aforementioned popular search engines and social media websites.[10]  In 2015, Wish spent approximately $100 million on advertisements on Facebook alone.[11]

26.     As recently addressed in news reports,[12] and as reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on Wish,[13] an astronomical number of counterfeit and infringing products are offered for sale and sold on Wish at a rampant rate.[14]

27.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Wish as well as potentially yet undiscovered additional online marketplace platforms.

28.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

## Defendants' Wrongful and Infringing Conduct

29.     Particularly in light of Plaintiff's success with its Egglettes Product, as well as the reputation they have gained, Plaintiff and its Egglettes Product have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame

---

[10] *See* SENSORTOWER, MOBILE ADVERTISING ATLAS, Q2 2017 REPORT, *available at* https://s3.amazonaws.com/sensortower-itunes/Quarterly+Reports/Sensor-Tower-Q2-2017-Ad-Intel-Data-Digest.pdf?=landing.

[11] *See* Jason Del Rey, *Meet Wish, the $3 Billion App That Could Be The Next Walmart*, RECODE (Dec. 28, 2015), https://www.recode.net/2015/12/28/11621724/meet-wish-the-3-billion-app-that-could-be-the-next-walmart.

[12] *See* Andi Sykes, *Specialized Wages Ware on Counterfeiters* (Dec. 9, 2016), http://singletrackworld.com/2016/12/specialized-wages-war-on-counterfeiters/

[13] *See, e.g.*, *Specialized Bicycle Components, Inc. v. in-style1820, et al*., Civil Case No. 16-cv-62711 (S.D. Fl. Nov. 17, 2016) and *David Gilmour Music Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Civil Case No. 17-cv-7763 (N.D. Ill., Nov.1, 2017).

[14] *See* Tom Hoffarth, *Lakers' Wish List Cheapened by the Dozen*, DAILY NEWS (Sept. 22, 2017), http://www.dailynews.com/2017/09/22/hoffarth-lakers-wish-list-cheapened-by-the-dozen/.

Plaintiff has amassed in its Egglettes Product, Egglettes Mark and the works embodied in the Egglettes Works, and Plaintiff investigates and enforces against such activities.

30.     As part of these efforts, Plaintiff retained New Alchemy Limited ("NAL"), a company that provides intellectual property infringement research services, to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on Wish.

31.     Through NAL's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling products bearing or used in connection with the Egglettes Mark and/or Egglettes Works, and/or products in packaging and/or containing labels bearing the Egglettes Mark and/or Egglettes Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Egglettes Mark and/or Egglettes Works and/or products that are identical or confusingly or substantially similar to the Egglettes Product (collectively referred to as, "Infringing Product(s)" or "Counterfeit Product(s)") to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts. Printouts of listings for Counterfeit Products from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit C** attached hereto and incorporated herein by reference**.**

32.     Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Egglettes Product or to use the Egglettes Mark and Egglettes Works, or any marks or artwork that are confusingly or substantially similar to the Egglettes Mark or Egglettes Works.

33.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Egglettes Product, only with minor variations that no ordinary consumer would recognize.

34.     During its investigation, NAL identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located in in New York (the "New York Address") and verified that each Defendant provides shipping to the New York Address. Printouts of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit C** attached hereto and incorporated herein by reference**.**

35.     NAL confirmed that each Defendant was and/or is still currently offering for sale and/or selling Counterfeit Products through their respective Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars through Wish's own payment processing system ("Wish Payment System"), or through accounts with the payment processing agency PayPal, Inc. ("PayPal"), and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  NAL's findings are supported by Defendants' listings for Counterfeit Products and/or the checkout pages for the Counterfeit Products, which are included in **Exhibit C** attached hereto and incorporated herein by reference.

36.     For example, below on the left is an image of Plaintiff's Egglettes Product, which typically retails for $14.99.  Depicted below on the right is a listing for Defendant mvp show's Counterfeit Product ("mvp show Infringing Listing" and "mvp show Counterfeit Product," respectively).  The mvp show Infringing Listing appears on Defendant mvp show's Merchant Storefront,  https://www.wish.com/c/5aa0e4af8fdae43a6065872d,  and  offers  the  mvp  show Counterfeit Product for $3.00 per item, using, featuring and/or incorporating one or more of the

Egglettes Mark, the Egglettes Works, and/or confusingly or substantially similar marks or artwork in the listing title "**Egglettes** Eggies Cooker Nonstick Silica Gel Egg Cup Cooking Egg Cooker" (emphasis added) and in the descriptions and/or product images in the body of the listing.  Further, the mvp show Counterfeit Product is virtually identical to the Egglettes Product and features and/or incorporates one or more of the Egglettes Works and Egglettes Mark.  There is no question that the mvp show Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Egglettes Product or that the mvp show Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Egglettes Works and Egglettes Mark:

<table>
<tr><td align="center"><u>**Egglettes Product**</u></td><td align="center"><u>**Mvp show Counterfeit Product**</u></td></tr>
<tr><td align="center"></td><td align="center"></td></tr>
</table>

37.    By way of another example, below on the left is an image of Plaintiff's Egglettes Product, which typically retails for $14.99.  Depicted below on the right is a listing for Defendant sellerDeal's Counterfeit Product ("sellerDeal Infringing Listing" and "sellerDeal Counterfeit Product," respectively).  The sellerDeal Infringing Listing appears on Defendant sellerDeal's Merchant Storefront, https://www.wish.com/c/5ac4a42407c7b41bfd151bc9, and offers the

sellerDeal Counterfeit Product for $2.00 per item, using, featuring and/or incorporating one or more of the Egglettes Mark, the Egglettes Works, and/or confusingly or substantially similar marks or artwork in the listing title "**Egglettes** Egg Cooker – Hard Boiled Eggs without the Shell Egg Cooker Hard & Soft Maker AS SEEN ON TV Non Stick Silicone" (emphasis added) and in the descriptions and/or product images in the body of the listing.  Further, the sellerDeal Counterfeit Product is virtually identical to the Egglettes Product and features and/or incorporates one or more of the Egglettes Works and Egglettes Mark.  There is no question that the sellerDeal Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Egglettes Product or that the sellerDeal Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Egglettes Works and Egglettes Mark:

**Egglettes Product**          **SellerDeal Counterfeit Product**

38.    As another example, below on the left is an image of Plaintiff's Egglettes Product, which typically retails for $14.99.  Depicted below on the right is a listing for Defendant

wuixaoxin's Counterfeit Product ("wuixaoxin Infringing Listing" and "wuixaoxin Counterfeit Product," respectively). The wuixaoxin Infringing Listing appears on Defendant wuixaoxin's Merchant Storefront, https://www.wish.com/c/5aaf2f34db5f1f1b443eaa1f, and offers the wuixaoxin Counterfeit Product for $10.00 per item, using, featuring and/or incorporating one or more of the Egglettes Mark, the Egglettes Works, and/or confusingly or substantially similar marks or artwork in the listing title "Silicone **Egglettes** Egg Cooker Hard Boiled Eggs without the Shell For Egg Tools Pack of 6pcs" (emphasis added) and in the descriptions and/or product images in the body of the listing. Further, the wuixaoxin Counterfeit Product is virtually identical to the Egglettes Product and features and/or incorporates one or more of the Egglettes Works and Egglettes Mark. There is no question that the wuixaoxin Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Egglettes Product or that the wuixaoxin Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Egglettes Works and Egglettes Mark:

**Egglettes Product**

**Wuixaoxin Counterfeit Product**





39.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Egglettes Mark and Egglettes Works, and have used marks, images and artwork that are confusingly and/or substantially similar to, identical to and/or constitute counterfeiting and/or infringement of the Egglettes Mark and Egglettes Works in order to confuse consumers into believing that such Counterfeit Products are Egglettes Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the Egglettes Mark and Egglettes Works, after Plaintiff obtained the federal registrations in the Egglettes Mark and Egglettes Works, as alleged above, and after Plaintiff's Egglettes Product, Egglettes Mark and Egglettes Works became well-known to the purchasing public.

40.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Egglettes Mark and Egglettes Works, of the fame and incalculable goodwill associated therewith and of the popularity

17

and success of the Egglettes Product, and in bad faith adopted the Egglettes Mark and Egglettes Works.

41.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Egglettes Mark, Egglettes Works and Egglettes Products.

42.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

43.     In engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Egglettes Mark, infringed the Egglettes Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

44.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting Under Sections 32, 34 and 35 of the Lanham Act,
15 U.S.C. §§ 1114(1)(b), 1116(d) and 1117(b)-(c)))**

45.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

46.     Plaintiff is the exclusive owner of all right and title to the Egglettes Mark.

18

47.     Plaintiff has continuously used the Egglettes Mark in interstate commerce since on or before the date of first use as reflected in the registration attached hereto as **Exhibit A**.

48.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Egglettes Mark and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Egglettes Mark and/or used spurious designations that are identical with, or substantially indistinguishable from, the Egglettes Mark on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

49.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Egglettes Mark through their participation in such activities.

50.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Egglettes Mark to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by

Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

51.     Defendants' unauthorized use of the Egglettes Mark on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Egglettes Mark.

52.     Defendants' actions constitute willful counterfeiting of the Egglettes Mark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

53.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Egglettes Mark and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Egglettes Mark.

54.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademark)**
**[115 U.S.C. § 1114/Lanham Act § 32(a)]**

55.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

56.     Plaintiff has continuously used the Egglettes Mark in interstate commerce since on or before the date of first use as reflected in the registration certificate attached hereto as **Exhibit A**.

57.     Plaintiff, as owner of all right, title and interest in and to the Egglettes Mark, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

58.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registration for the Egglettes Mark.

59.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Egglettes Mark, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell Egglettes Product and/or related products bearing the Egglettes Mark into the stream of commerce.

60.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Egglettes Mark and/or which are identical or confusingly similar to the Egglettes Mark.

61.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Egglettes Mark and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in

connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

62.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Egglettes Mark.

63.     Defendants' egregious and intentional use of the Egglettes Mark in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Egglettes Product or are otherwise associated with, or authorized by, Plaintiff.

64.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Egglettes Mark, as well as with bad faith and the intent to cause confusion, mistake and deception.

65.     Defendants' continued, knowing, and intentional use of the Egglettes Mark without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Egglettes Mark in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

66.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Egglettes Mark and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Egglettes Mark.

67.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

68.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69.     Plaintiff, as the owner of all right, title and interest in and to the Egglettes Mark, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

70.     The Egglettes Mark is inherently distinctive and/or has acquired distinctiveness.

71.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to, and constitute reproductions of the Egglettes Mark and Egglettes Works and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Egglettes Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood

23

of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Egglettes Mark and Egglettes Works, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

72.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Egglettes Product using marks and/or artwork that is identical and/or confusingly or substantially similar to, or which constitute colorable imitations of the Egglettes Mark and Egglettes Works, Defendants have traded off the extensive goodwill of Plaintiff and its Egglettes Product and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Egglettes Mark, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

73.    Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks and artwork that are identical or confusingly or substantially similar to and constitute reproductions of the Egglettes Mark and Egglettes Works would cause confusion, mistake or deception among purchasers, users and the public.

74.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Egglettes Product, Egglettes Mark and Egglettes Works.

75.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Egglettes Product and by depriving Plaintiff of the value of its Egglettes Mark and Egglettes Works as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of Egglettes Mark and Egglettes Works.

76.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Federal Copyright Infringement)**
**[17 U.S.C. § 501(a)]**

77.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

78.     Plaintiff is the exclusive owner of the Egglettes Works.

79.     Defendants had actual notice of Plaintiff's exclusive rights in and to the Egglettes Works.

80.     Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's Egglettes Product and/or Egglettes Works.

81.     Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Egglettes Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products which bear such Egglettes Works, or artwork that is, at a minimum, substantially similar to the Egglettes Works.

82.     Defendants' unlawful and willful actions as alleged herein constitute infringement of the Egglettes Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Egglettes Works in violation of 17 U.S.C. § 501(a).

83.     Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

84.      Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### (Violation of Deceptive Acts and Practices Unlawful)
### [N.Y. Gen. Bus. Law § 349]

85.      Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

86.     Through Defendants' unlawful, unauthorized and unlicensed use of the Egglettes Works and/or Egglettes Mark on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products which are identical and/or confusingly or substantially

similar to Plaintiff's Egglettes Product, Defendants have engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

87.    Defendants' aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business, trade or commerce.  Such conduct has deceived and materially mislead, or has a tendency to deceive and materially mislead the consuming public, and has injured and will continue to injure Plaintiff's business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 349.

88.    As a result of Defendants' actions alleged herein, Plaintiff has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law.

89.    Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorneys' fees.

### SIXTH CAUSE OF ACTION
### (False Advertising Unlawful)
### [N.Y. Gen. Bus. Law § 350]

90.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

91.    Without the authorization of Plaintiff, Defendants have used the Egglettes Mark and/or Egglettes Works and/or marks and/or artwork and/or packaging designs that are identical and/or confusingly or substantially similar to the Egglettes Mark and/or Egglettes Works in connection with the advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products which are identical and/or confusingly or substantially similar to Plaintiff's Egglettes Product, causing confusion, mistake and deceiving consumers and the public as to the source, origin, sponsorship or quality of Defendants'

Counterfeit Products.

92.     Defendants' aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade or commerce and has injured and will continue to injure Plaintiff's business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 350.

93.     As a result of Defendants' actions alleged herein, Plaintiff has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law.

94.     Pursuant to N.Y. Gen. Bus. Law § 350(e), Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorneys' fees.

### SEVENTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

95.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

96.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Egglettes Product to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

97.     Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and

28

derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

98.     Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

99.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

100.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Egglettes Product in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Egglettes Mark and Egglettes Works as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

101.    As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

**EIGHTH CAUSE OF ACTION**
**(Unjust Enrichment)**

**[New York Common Law]**

102.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

103.     By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

104.     Defendants' retention of monies gained through their deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.     In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Egglettes Mark, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the Egglettes Works under 17 U.S.C. § 501(a);

F.      In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of the Egglettes Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment;

G.      For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law § 349(h);

H.      For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law § 350(e);

I.      For an award of damages to be proven at trial for common law unfair competition;

J.      For an award of damages in an amount to be proven at trial for unjust enrichment;

K.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives,

directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

    i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing and/or Counterfeit Products;

    ii.   directly or indirectly infringing in any manner any of Plaintiff's trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Egglettes Mark or Egglettes Works;

    iii.   using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Egglettes Mark and Egglettes Works to identify any goods or services not authorized by Plaintiff;

    iv.   using any of Plaintiff's trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Egglettes Works or Egglettes Mark, or any other marks or artwork that are confusingly or substantially similar to the Egglettes Mark or Egglettes Works on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    v.   using any false designation of origin or false description, or engaging in any

action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.  engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix.   secreting, destroying, altering, removing, or otherwise dealing with the Counterfeit Products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

x.    from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts,

any money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) ("Defendants' Assets") from or to financial accounts associated with or utilized by any Defendant or any Defendant's User Accounts or Merchant Storefronts (whether said account is located in the U.S. or abroad) ("Defendants' Financial Accounts"), and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

xi.  from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xii.  effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

xiii.  providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiv.  instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (xiii) above; and

L.  For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Infringing and/or Counterfeit

34

Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's trademarks, copyrights or other rights including, without limitation, the Egglettes Mark or Egglettes Works, or bear any marks that are confusingly or substantially similar to the Egglettes Mark or Egglettes Works;

M.      For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's trademarks, copyrights or other rights including, without limitation, the Egglettes Mark or Egglettes Works, or bear any marks that are confusingly or substantially similar to the Egglettes Mark or Egglettes Works pursuant to 15 U.S.C. § 1118;

N.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest;

O.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

P.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

Q.      For Plaintiff's reasonable attorneys' fees;

R.      For all costs of suit; and

S.      For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.


Dated: August 13, 2018                          Respectfully submitted,

                                                EPSTEIN DRANGEL LLP

                                        BY: _____
                                                Spencer Wolgang (SW 2389)
                                                swolgang@ipcounselors.com
                                                Brieanne Scully (BS 3711)
                                                bscully@ipcounselors.com
                                                Mary Kate Brennan (MB 5595)
                                                mbrennan@ipcounselors.com
                                                Ashly E. Sands (AS 7715)
                                                asands@ipcounselors.com
                                                Jason M. Drangel (JD 7204)
                                                jdrangel@ipcounselors.com
                                                60 East 42nd Street, Suite 2520
                                                New York, NY 10165
                                                Telephone:     (212) 292-5390
                                                Facsimile:     (212) 292-5391
                                                *Attorneys for Plaintiff*
                                                *Ideavillage Products, Inc.*

# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

# EGGLETTES

**Reg. No. 5,500,970**

**Registered Jun. 26, 2018**

**Int. Cl.: 21**

**Trademark**

**Principal Register**

Ideavillage Products Corp.  (NEW JERSEY CORPORATION)
155 Route 46 West
Wayne, NEW JERSEY 07470

CLASS 21: Cookware, namely non-stick pods used for hard boiling eggs; Cookware used in boiling water, namely egg shell shaped non-stick pods used for cooking eggs

FIRST USE 1-24-2018; IN COMMERCE 1-24-2018

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 87-558,797, FILED 08-07-2017



Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- ***First Filing Deadline:***  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:***  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# EXHIBIT B

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn A. Temple*

Acting United States Register of Copyrights and Director

**Registration Number**

## PA 2-106-754

**Effective Date of Registration:**
March 13, 2018

---

## Title

**Title of Work:** Egglettes Commercial

## Completion/Publication

**Year of Completion:** 2017
**Date of 1st Publication:** August 26, 2017
**Nation of 1st Publication:** United States

## Author

- **Author:** Concepts TV Productions
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Ideavillage Products Corp.
155 Route 46 West, Wayne, NJ, 07470, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Organization Name:** Epstein Drangel LLP
**Name:** Jason M. Drangel
**Email:** mail@ipcounselors.com
**Telephone:** (212)292-5390
**Address:** 60 East 42nd Street
Suite 2520
New York, NY 10165 United States

## Certification

Page 1 of 2

2

**Name:** Annmary Ittan
**Date:** March 13, 2018
**Applicant's Tracking Number:** 1111-001C

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn Temple Claggett*

Acting United States Register of Copyrights and Director

**Registration Number**

## VA 2-094-787

**Effective Date of Registration:**
March 13, 2018

---

## Title

| | |
|---|---|
| **Title of Work:** | Egglettes Packaging Artwork, Instructions and Recipe Booklet |
| **Content Title:** | Egglettes Packaging Artwork |
| | Egglettes Instructions |
| | Egglettes Recipe Booklet |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2017 |
| **Date of 1st Publication:** | January 24, 2018 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| **Author:** | Ideavillage Products Corp. |
| **Author Created:** | photograph, 2-D artwork, Text |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |
| **Author:** | Morris Weber |
| **Author Created:** | photograph, 2-D artwork, Text |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Ideavillage Products Corp. |
| | 155 Route 46 West, 4th Floor, Wayne, NJ, 07470, United States |
| **Transfer statement:** | Assignment |

## Rights and Permissions

Page 1 of 2

4

**Organization Name:** Epstein Drangel LLP
**Name:** Jason M. Drangel
**Email:** mail@ipcounselors.com
**Telephone:** (212)292-5390
**Address:** 60 East 42nd Street
Suite 2520
New York, NY 10165 United States

## Certification

**Name:** Annmary Ittan
**Date:** March 13, 2018
**Applicant's Tracking Number:** 1111-001C

**Correspondence:** Yes
**Copyright Office notes:** Basis for Registration: Unit of publication

